UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:16-CV-114-TBR

WILLIAM MEECE                                                                                                          PLAINTIFF

v.

RODNEY BALLARD, *et al.*                                                                                     DEFENDANT


**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff William Meece's motion for a preliminary injunction. (DN 4). Defendants have responded. (DN 6). Plaintiff has replied (DN 8). For the following reasons, Plaintiff's motion (DN 4) is DENIED.

BACKGROUND

William Meece is an adherent of Reform Judaism who has been incarcerated at the Kentucky State Penitentiary ("KSP") since 2006. In 2008, KSP began offering Kosher meals to inmates. Interested inmates, such as Meece, were required to sign a Kosher Diet Participation Agreement to be eligible. (DN 4-7). Among other things, the Kosher Diet Participation Agreement stipulated that inmates could "change [their] religion and corresponding diet not more than once each year." (DN 4-7). Inmates could also be removed from the program if they violated the terms of the agreement more than once, with a written warning being given after the first violation. Violations included eating and possessing foods not "served as a part of the Kosher Program," purchasing food "not permitted under my religious diet," and providing "all or portions of my specially prepared meal to other inmates." (DN 4-7).

1

On August 31, 2015, Meece received his first written warning.  (DN 6-2).  On November 25, 2015, Meece received a "Notice of removal from the Kosher meal program."  (DN 6-3). Meece received this notice after purchasing a rotisserie chicken from the Recreation Department. Meece believes that consuming a rotisserie chicken does not violate the tenets of Reform Judaism.  Meece claims that KSP uses the stricter dietary requirements of Orthodox Judaism in determining what may be consumed as part of a Kosher meal plan.  (DN 1).  Meece filed a grievance over his removal from the Kosher meal plan.  In response, Defendants claim that the "rotisserie chicken sold by Sam club (sic) does not have a kosher symbol by a major kashrut supervising agency."  (DN 4-8).

Meece filed this action claiming Defendants violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA") by preventing Meece from receiving Kosher meals and requiring Meece to follow a Kosher Diet Participation Plan which follows the tenets of Orthodox Judaism and not Reform Judaism.  (DN 1).  Meece is currently serving a one-year suspension from the Kosher meal plan and is not eligible to reapply until November 25, 2016.  Currently before the Court is Meece's motion for a preliminary injunction seeking that he be immediately restored to the Kosher meal program.

## STANDARD

A "court's decision on whether to grant a motion for preliminary injunction involves a balancing of the following factors: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest." *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009); *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coalition of*

*Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). However, "[w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

The movant "must address each of the factors regardless of its strength, and provide us with facts and affidavits supporting these assertions." *Ohio ex rel. Celebrezze v. Nuclear Regulatory Com.*, 812 F.2d 288, 291 (6th Cir. 1987). The decision whether to grant a preliminary injunction is within the discretion of the court. *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

## DISCUSSION

The Court considers the following factors in deciding whether to grant Meece's motion for a preliminary injunction: (I) the likelihood that Meece will succeed on the merits; (II) whether Meece will suffer irreparable harm if the injunction is not granted; (III) the probability that an injunction will cause substantial harm to others; and (IV) whether the injunction advances the public interest.

### I. Likelihood of Success on the Merits.

The first factor is the likelihood that Meece will succeed on the merits of his claim. While this factor is important in all preliminary injunction decisions,[1] it takes on special importance when a constitutional right has arguably been violated. *Reno*, 154 F.3d at 288

---

[1] *Celebrezze*, 812 F.2d at 290 ("The probability of success that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent an injunction. Thus, a stay may be granted with either a high probability of success and some injury or *vice versa*. However, we reiterate that the demonstration of a mere 'possibility' of success on the merits is not sufficient.") (citations omitted).

("When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor").

Meece has raised one claim. Meece argues that Defendants violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA") by preventing Meece from receiving Kosher meals and requiring Meece to follow a Kosher Diet Participation Plan which follows the tenets of Orthodox Judaism and not Reform Judaism. (DN 1). RLUPIDA provides in part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). A prisoner bears the initial responsibility of establishing that there has been a substantial burden on religious exercise. The onus shifts to the government to "establish that the burden is the least restrictive way to further a compelling governmental interest." *Jehovah v. Clarke*, 798 F.3d 169, 176-77 (4th Cir. 2015); *Ali v. Stephens*, 822 F.3d 776, 782-83 (5th Cir. 2016).

### a. Substantial Burden on Religious Exercise.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country."). "[P]risoners enjoy freedom of speech and religion under the First and Fourteenth Amendments." *Bell*, 441 U.S. at 545. "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'"

*Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (*quoting Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987).

The Court finds that Meece has submitted sufficient evidence to establish these elements. First, Meece claims that complying with kashrut is a requirement of his Jewish faith. The statement of Rabbi David Ariel-Joel says that "Reform Judaism has several practical differences from Orthdox Judaism" and that "[f]or most Reform Jews and rabbis, keeping Kosher is as simple as abstaining from shellfish and pork, separating dairy products from meat, and ensuring that one's food is prepared in a manner that does not expose it to contamination by non-kosher items." (DN 4-6). Second, the Court finds that Meece's beliefs are sincerely held. In his affidavit, Meece states that he was born Jewish, has actively practiced at Temple Adath Israel since 1994, has continued to practice his faith while incarcerated, and that as a "Reform Jew I keep Kosher in accordance with Leviticus Chapter 11." (DN 4-2).[2]

Having found that Meece has a sincerely held religious belief, the Court must also answer whether the terms of the Kosher Diet Participation Plan constitutes a substantial burden on religious exercise. For the following reasons, the Court finds that the plan does not. "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (*quoting Thomas v. Review Bd. of*

---

[2] Defendants question whether Meece has a sincerely held belief that he must follow a Kosher diet because the rotisserie chicken consumed by Meece did not have a "kosher symbol by a major kashrut supervising agency" and was not prepared in a certified kosher kitchen. (DN 4-8, 6). Defendants' argument requires the Court to assume that Meece was aware that the rotisserie chicken was not Kosher and nevertheless consumed the chicken. Whether a prisoner's religious belief is sincere is a question of fact. *Porter v. Caruso*, 479 F. Supp. 2d 687, 697 (W.D. Mich. 2007); *United States v. Seeger*, 380 U.S. 163, 185 (1965). Defendants' argument requires further factual development before it can be decided.

*Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). The failure to provide a Kosher meal plan has been deemed by other courts to be a substantial burden on religious exercise. *See e.g. Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) ("Given the strong significance of keeping kosher in the Jewish faith, the TDCJ's policy of not providing kosher food may be deemed to work a substantial burden upon Baranowski's practice of his faith."). This case presents a subtler issue of whether a prison that offers a Kosher meal plan may restrict inmates to only eat foods approved by that meal plan. The Court finds that in this situation, there is significantly less pressure on an inmate to violate his beliefs. It appears that the Kosher meal plan offered by KSP provides sufficient foods that will allow Meece to comply with the dietary requirements of his religion. The burden on Meece is that he believes he is being deprived food which would also comply with his religion. This type of burden is generally insufficient to qualify as a substantial burden on religious exercise. *See e.g. Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015); *Hudson v. Caruso,* 748 F.Supp.2d 721, 729–30 (W.D.Mich.2010) (holding that providing Muslim inmates a vegetarian option without providing Halal meat entrees did not substantially burden free exercise"); *Cloyd v. Dulin*, No. 3:12-CV-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012) ("Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided halal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible)."). It appears at this time that Meece will not succeed in showing that the Kosher Diet Participation Plan places a substantial burden on Meece's religious exercise.

### b. Least Restrictive Means to Further Compelling Government Interest.

The Court next addresses whether Defendants implementation and enforcement of the Kosher Diet Participation Plan is the least restrictive means of furthering a compelling

government interest. RLUIPA requires the government to demonstrate "that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "While the Act adopts a 'compelling governmental interest' standard, context matters in the application of that standard." *Cutter v. Wilkinson*, 544 U.S. 709, 722–23 (2005) (citation and punctuation omitted). "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions" and "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id*. at 723 (citation omitted). "RLUIPA, in other words, is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs." *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (*citing Lovelace v. Lee,* 472 F.3d 174, 190 (4th Cir.2006)).

    This does not mean, however, that bare claims of security, discipline, or cost control will suffice to show a compelling government interest. "Congress mandated that this concept [religious exercise] 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) (quoting § 2000cc–3(g)). "And Congress stated that RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" *Id*. (*quoting* § 2000cc–3(c)).

    Defendants argue that "requiring an annual commitment" to the Kosher Diet Participation Plan is the "least restrictive means of furthering a compelling governmental interest." (DN 6).

Defendants claim that permitting "inmates to decide day to day or minute to minute what is and is not required to practice their religion" compromises the safety of the prison and wastes valuable resources for inmates who do comply with the Kosher Diet Participation Plan. (DN 6). Defendants also argue the one-year ban for a second violation of the Kosher Diet Participation Plan is the least restrictive means of enforcing the government's interest is safety and reducing waste.

      The Court finds that Defendants are likely to prevail on their justification for removing Meece from the Kosher Diet Participation Plan. Courts in this Circuit have routinely found that prison officials may remove a prisoner from a kosher meal plan if that prisoner violates the terms of the meal plan. *See Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (holding prison officials had a legitimate penological interests in denying kosher meals to prisoner who stole and consumed non-kosher meals); *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009) ("Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison."); *Green v. Tudor*, 685 F. Supp. 2d 678, 698 (W.D. Mich. 2010) ("The State of Michigan expends significant financial and administrative resources in attempting to accommodate prisoners' religious beliefs by providing them with special diets that do not offend those religious beliefs. The State's resources are finite, and prisoner demands for specialized diets and food preparation are not."); *see also Gutman v. Wriggelsworth*, No. 1:09-CV-628, 2010 WL 1814816, at *4 (W.D. Mich. Feb. 4, 2010).

      These cases are arguably distinguishable since they rely upon *Turner v. Safley*, 482 U.S. 78 (1987). The *Turner* Court held that a prison "regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89. The Supreme Court has since stated that *Turner* does

8

not apply to RLUIPA claims, which instead "asks whether the government has substantially burdened religious exercise." *Holt*, 135 S. Ct. at 190.[3] It is unclear whether Sixth Circuit authority preceding *Holt* would have a different outcome in light of the heightened standard applied by *Holt*. However, the *Holt* court acknowledged that "even if a claimant's religious belief is sincere, an institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests." *Id*. at 867. Following *Holt*, other courts have permitted a prisoner to be removed from a kosher meal plan if they did not comply with the terms of that plan. *See e.g. Isby-Israel v. Lemmon*, No. 213CV00172WTLDKL, 2016 WL 3072177, at *5 (S.D. Ind. June 1, 2016) (prisoner refused to sign terms of meal plan).

      The Court recognizes that this area of law is still developing and that this issue is before the Court on a limited record. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) ("a court's findings and conclusions at the preliminary injunction stage are by nature *preliminary*. . . . [and] therefore are not binding at summary judgment). However, in light of the case law supporting the proposition that a prison may remove a noncompliant prisoner from a meal plan, the Court finds that Meece is unlikely to prevail on the merits of his claim.

## II.    Irreparable Harm.

      Whether plaintiff will suffer an irreparable harm is a significant factor in whether a court may grant a preliminary injunction. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d

---

[3] *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) ("Congress did this by replacing the 'legitimate penological interest' standard articulated in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), with the 'compelling governmental interest' and 'least restrictive means' tests codified at 42 U.S.C. § 2000cc–1(a)").

100, 105 (6th Cir. 1982). The "harm alleged must be both certain and great, rather than speculative or theoretical." *Ohio ex rel. Celebrezze*, 812 F.2d at 290.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976) (plurality); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."); *see also Beerheide v. Zavaras*, 997 F. Supp. 1405, 1410 (D. Colo. 1998) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). "[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *ACLU v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003).

Meece claims that the loss of his rights under RLUIPA and the First Amendment to practice his religion is an irreparable harm. Defendants argue that Meece is eligible to reapply to the Kosher meal program in November, 2016. The Court finds that the Kosher meal plan is not likely to have placed a substantial burden on Meece's religious freedom. Accordingly, Meece is not threatened with an irreparable injury which would warrant a preliminary injunction. *Reno*, 154 F.3d at 288 ("to the extent that Connection can establish a substantial likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights.").

### III. Harm to Others.

While irreparable harm to the plaintiff is one factor, the other side of that coin is irreparable harm to others. The answer to this factor is also determined by the potential outcome of the underlying merits of the case. *Reno*, 154 F.3d at 288. If plaintiff is likely to prevail, then

the plaintiff would suffer irreparable harm if they were deprived even temporarily of their constitutional rights. If the government is likely to prevail, then the government would be harmed if they were enjoined from conduct which is otherwise permissible. *Id.* ("although the government presumably would be substantially harmed if enforcement of a *constitutional* law aimed at fighting child pornography were enjoined, this determination, too, first requires a review of the merits of the claim."); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Having found that Meece is unlikely to prevail on the merits, the Court finds this factor also weighs against granting a preliminary injunction.

## IV. Public Interests.

The final factor is whether an injunction would serve the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (*quoting Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

"[T]he determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Reno*, 154 F.3d at 288 (*quoting G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994)); *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995) ("the public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties."). Since the Court has found Meece unlikely to prevail on the merits, this factor also provides no support for Meece's request for a preliminary injunction.

Accordingly, for the foregoing reasons, the Court finds that Meece has been unable to establish a likelihood of success on the merits, and the failure to establish this critical factor requires the Court to deny Meece's request for a preliminary injunction.

## CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Plaintiff's motion for preliminary injunction (DN 4) is DENIED.